UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY CUTLIP,<br><br>                 Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>               Defendant. | ) CV F 99 5778 SMS<br>)<br>) DECISION AND ORDER DENYING<br>) PLAINTIFF'S SOCIAL SECURITY<br>) COMPLAINT (Doc. 1)<br>)<br>) ORDER DIRECTING THE CLERK TO<br>) ENTER JUDGMENT FOR DEFENDANT<br>) MICHAEL J. ASTRUE AND AGAINST<br>) PLAINTIFF ROY CUTLIP<br>)<br>)<br>) |

Plaintiff is proceeding with an action in which Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security[1] denying Plaintiff's application for benefits. Pursuant to 28 U.S.C. § 636(c), both parties have consented to the Magistrate's jurisdiction to conduct all proceedings, including ordering the entry of judgment.[2]

---

[1] Michael J. Astrue is substituted for his predecessor as Commissioner of the Social Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

[2] On March 1, 2000, Judge Oliver W. Wanger reassigned the matter to the undersigned Magistrate Judge for all further proceedings, including the entry of judgment.

<u>                      </u>   <u>SCOPE AND STANDARD OF REVIEW</u>

<u>     </u>Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u>, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it may not simply isolate a portion of evidence that supports the decision. <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's

determination that the claimant is not disabled if the

Commissioner applied the proper legal standards, and if the

Commissioner's findings are supported by substantial evidence.

See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

the Court concludes that the ALJ did not use the proper legal

standard, the matter will be remanded to permit application of

the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

Cir. 1987).

ANALYSIS

I. Summary of the Proceedings

Plaintiff twice filed applications for Social Security

Disability benefits and Supplemental Security Disability Income

Benefits under Titles II and XVI of the Social Security Act:

first in January 1995, and then separately in June 1999. The 1999

application resulted in a determination in January 2000 that

Plaintiff had been disabled with a residual functional capacity

(RFC) for light work as of June 1, 1999. The 1995 application

resulted in a determination that Plaintiff had a sedentary RFC

but was not disabled; Plaintiff successfully sought judicial

review in this Court and obtained an order of remand for an ALJ

to consider a relatively limited issue concerning transferability

of skills at step five.

The decision of the undersigned Magistrate Judge, dated

March 15, 2000, directing the remand, stated:

Plaintiff's motion for summary judgment is hereby
GRANTED as to the issue of remand pursuant to
Sentence 6 of 42 U.S.C. § 405(g). See 42 U.S.C.
§ 1383(c)(3). Plaintiff's request for an award
of disability benefits IS DENIED. The Commissioner's

3

cross-motion for summary judgment IS DENIED. The
Clerk of the Court is hereby directed to enter
judgment in favor of the plaintiff.

A judgment was subsequently entered on March 20, 2000. The

judgment stated:

DECISION BY COURT: This action came to trial or hearing
before the Court. The issues have been tried or heard
and a decision has been rendered.
IT IS HEREBY ORDERED AND ADJUDGED that JUDGMENT IS ENTERED
IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT.

Although the Court referred to sentence six of § 405(g) in the

decision, this reference was erroneous. Plaintiff never raised

any issue of a remand pursuant to sentence six in the motion for

summary judgment, which challenged only the ALJ's finding that

Plaintiff had transferable skills with respect to any of the jobs

that the ALJ had found that Plaintiff, with an unchallenged

sedentary RFC, could perform. The Plaintiff's challenge was that

the finding lacked the support of substantial evidence.

Plaintiff's motion for summary judgment prayed only for an order

reversing the administrative decision in favor of Defendant, or,

in the alternative, remanding the matter for a new hearing. (Mot.

for Sum. Jmt. filed November 12, 1999; Memo. of Law p. 7.) The

nature and terms of the final judgment entered in Plaintiff's

favor indicate that the Court intended to issue a final decision

on the merits of the matter before it pursuant to sentence four

of § 405(g).

In connection with the remand, the ALJ was directed by the

Appeals Council to consider the intervening finding of

Plaintiff's disability as of June 1999 with a light RFC. Upon

remand, another hearing was held, further evidence was

considered, and on November 6, 2002, Administrative Law Judge

Michael J. Haubner issued a decision determining the Plaintiff was not disabled. The Appeals Council stated that it found no reason to assume jurisdiction of the case and so notified Plaintiff on July 20, 2004.

However, after the remand and the further decision from the agency, the parties apparently proceeded as if the case was returning to Court after a sentence six remand. Without further order of this Court, Defendant filed on November 23, 2004, a notice of lodging the administrative record and request for the issuance of a new scheduling order in the original case file. (Doc. 18.) The notice stated that the lodging of the record was deemed to be Defendant's answer to the complaint pursuant to the standing scheduling order in Social Security Administration disability benefits appeals. In the notice of lodging and request for scheduling order, Defendant noted that the Court had issued a judgment as if the case was remanded pursuant to sentence four, and stated that the Court's decision and order erroneously set forth that the case was remanded pursuant to sentence six of § 405(g). However, Defendant stated that it had treated the case as a sentence six remand. (Notice and Request p. 1 fn. 1.) Defendant noted that the Commissioner had processed the administrative record of the proceedings upon remand and had certified it on September 22, 2004, in order to permit the litigation to move forward. (Id.)

Upon conclusion of the remanded proceedings, this Court ordered the clerk to reopen the case as is customarily done in connection with a remand pursuant to sentence six of 42 U.S.C. § 405(g), and the Court ordered the issuance of a new scheduling

order. Defendant does not assert any immunity or other defense concerning the procedural path on which this case has returned to this Court.

Plaintiff filed his brief and memorandum on April 12, 2005. Defendant filed opposition on July 22, 2005. On August 9, 2005, Plaintiff filed his reply.

II. Scope of Remand

    A. Background

In the order granting Plaintiff's motion for summary judgment and remanding this case to the agency, filed on March 15, 2000 (A.R. 632-40), this Court reviewed the decision of Administrative Law Judge (ALJ) Milan M. Dostal dated August 25, 1997 (A.R. 14-22), in which the ALJ rendered an opinion with respect to Plaintiff's application filed on January 10, 1995, alleging onset of disability on May 20, 1994.

The ALJ had found that Plaintiff was not disabled; he concluded that Plaintiff's severe impairments of chronic low back pain with degenerative joint and disc disease and degenerative joint disease of the cervical spine, non-specific neurological complaints, bilateral sensory hearing loss, and loss of vision in the left eye were not listed and did not medically equal any listed impairment; Plaintiff had the RFC to perform a full range of sedentary work reduced by exertional and nonexertional limitations such that Plaintiff could lift twenty pounds regularly and thirty pounds occasionally, sit for two hours at a time for a total of eight hours; stand and/or walk for one hour at a at time for a total of four hours each, with occasional stooping, bending, squatting, crawling, climbing, or reaching;

but was restricted from working around exposure to marked changes

in temperature and humidity and dust, fumes and gases, and

further had mild restrictions against working around unprotected

heights or moving machinery. (A.R. 18-19.) ALJ Dostal concluded

that Plaintiff had the RFC to perform sedentary work activity

that had not been significantly compromised by exertional or

nonexertional limitations. (Id. p. 19.) Based on the testimony of

a vocational expert (VE), the ALJ found that Plaintiff was unable

to perform his past relevant work. At step five, the ALJ

concluded that using the medical-vocational rules 201.20 and

201.11 of Table No. 1 of Appendix 2 as a framework for decision,

and considering Plaintiff's age (fifty-two years old at the time

of the ALJ's decision [A.R. 15]), education, and work experience

as well as the testimony of the VE, the ALJ concluded that

Plaintiff had transferable skills to perform several jobs

available in the national economy, including assembler (60,000

jobs), sorter (30,000), and inspector (80,000). (A.R. 20.)

In its order granting summary judgment and ordering remand,

the Court concluded that, as Plaintiff contended in his opening

brief/motion for summary judgment filed on November 12, 1999,

there was no evidence supporting the ALJ's conclusion that

Plaintiff had transferable skills. The Court stated:

> Cutlip is correct that individuals in the 50-54 age
> group with limited education and nontransferable skills
> are generally found disabled. While Cutlip may have
> transferable skills, it is unclear whether or not those
> skills are transferable to the jobs of assembler, sorter,
> and inspector. It is further unclear whether or not these
> three jobs are unskilled such that Cutlip would be
> deemed uncompetitive for these jobs due to his age.
> As such, the Court remands the matter to clarify this.

(A.R. 640.) The Court then recited the disposition of the motions

before it and directed the clerk to enter judgment as previously

quoted.

On remand, the Appeals Council of the agency issued the

following order on December 11, 2001:

> The United States District Court has remanded this
> case to the Commissioner of Social Security for further
> administrative proceedings in accordance with the fourth
> sentence of section 205(g) of the Social Security Act.
> Therefore, <u>the Appeals Council</u> vacates the final decision
> of the Commissioner of Social Security in this case
> and <u>remands the case to an Administrative Law Judge</u>
> <u>for further proceedings consistent with the order of the</u>
> <u>court.</u> The Administrative Law Judge will provide the
> claimant an opportunity to appear at a hearing, take
> any further action needed to complete the administrative
> record and issue a new decision. <u>The Administrative Law</u>
> <u>Judge will also consider the finding that the claimant</u>
> <u>became disabled on June 1, 1999, made in connection with</u>
> <u>subsequent applications filed on June 11, 1999.</u> All
> the appropriate records will be obtained.

(Emphasis added.) (A.R. 642.)[3]

Upon remand, ALJ Michael J. Haubner held a hearing on

October 16, 2002, at which Plaintiff appeared and was represented

by an attorney. (A.R. 572.) The ALJ had received before the

hearing answers to interrogatories from Thomas Dachelet, a VE,

concerning Plaintiff's past relevant work and transferable

skills. (A.R. 572, citing to Exhibits 4E and 5E, at A.R. 678-

688.) The ALJ issued a decision dated November 6, 2002 (A.R. 572-

578), in which he acknowledged that the Court's order directed

remand because the ALJ did not completely address the issue of

transferable skills, and that he had been instructed to clarify

---

[3] According to Defendant, Plaintiff had filed additional, later applications for benefits on February 16, 1995, October 22, 1997, and January 29, 1999, which were denied (but only one was denied by an ALJ). (Deft.'s Brief p. 2 n. 1, citing in turn A.R. 80-83, 17, 211-214, 84-87, 90-92, 166-74, 192-95, 196-99, 202-05.) The declaration of Dennis V. Ford of the SSA submitted with Defendant's Supplemental Brief establishes that Plaintiff filed an application for Title XVI benefits on June 11, 1999, and the State Agency determined that Plaintiff became disabled beginning June 1, 1999.

whether Plaintiff had skills transferable to the jobs of
assembler, sorter, and inspector. (A.R. 572.) He further noted
the instruction to consider the finding that Plaintiff had been
found to have been disabled on June 1, 1999, in connection with
subsequent applications filed on June 11, 1999. (Id.) The ALJ
considered the relevant time period to be from May 20, 1994 (the
date on which Plaintiff in the first application had alleged that
he initially became disabled), until May 31, 1999 (the day before
the date upon which Plaintiff had been determined with reference
to the second application in the interim to have become
disabled). (Id.)

        Instead of simply receiving and considering evidence from
the VE regarding the transferability of Plaintiff's skills and
then further considering the subsequent finding of Plaintiff's
disability, the ALJ additionally took into evidence medical
records covering the period from May 3, 1995 to September 14,
1995 from U.C. Irvine Medical Center (A.R. 689-731); records from
Sutter Merced Medical Center from April 18, 1997 through
September 13, 1999 (A.R. 733-813); a report of an internal
medicine consultative examination dated November 20, 1999, by
Usman Ali, M.D. (A.R. 814-17) (a report thus dated approximately
six months after the period of disability pertinent to
Plaintiff's original application), and an RFC assessment by state
agency physician dated December 31, 1999 and consultation request
dated January 3, 2000 (A.R. 818-27) (items likewise occurring
seven or more months beyond the pertinent period).

        In his decision of November 2002, the ALJ not only addressed
sequential evaluation step five, but he also re-adjudicated

1
2
3
4
5
6
7
8
9
10
11
12

sequential evaluation step two[4] as well as Plaintiff's previously unchallenged RFC, elevating it from sedentary to light. (A.R. 573.) The ALJ re-evaluated evidence that had been evaluated in the initial opinion, including the evidentiary basis of the initial sedentary RFC. (A.R. 574.) He also considered evidence emanating from time periods before and after the pertinent period. (A.R. 574-75.) He considered transferability of skills to new positions addressed by the VE based on the new RFC of light work, including a stage setting painter and railroad car letterer; he also considered the availability of unskilled sedentary and light positions in the economy based on assumptions consistent with the new, less restrictive RFC. (A.R. 575-76.)

13
14
15

The ALJ did make findings regarding the transferability of Plaintiff's skills to the jobs identified in the original decision which resulted in the remand:

16
17
18
19

> I posed a hypothetical question to Mr. Dachelet based upon the sedentary residual functional capacity found by the Administrative Law Judge in the vacated August 29, 1997 hearing (Exhibits 4E, p. 2 and Exhibits 84-95). He concluded that there were no jobs at the sedentary level that would use the claimant's past relevant work skills (Exhibit 4E, p. 1A).

20
21
22
23
24

(A.R. 576.) He then proceeded to apply the medical vocational rules in light of Plaintiff's light RFC during the relevant period and found that he was not disabled because his limitations did not significantly affect his ability to perform a broad range of light work. (A.R. 576.)

25
26

On January 2, 2003, Plaintiff sought review by the Appeals Council of the ALJ's decision of November 2002. (A.R. 566.)

27
28

[4] He did not list degenerative joint disease of the cervical spine as a severe impairment, contrary to the unchallenged findings of the initial ALJ.

Plaintiff argued that upon remand the ALJ had exceeded the scope of the Court's order, had violated the law of the case, and had made unnecessary findings pursuant to the Court's order of remand and the order of the Appeals Council directing further proceedings consistent with the Court's order. (A.R. 561-63.)

B. Law of the Case, Res Judicata, Collateral Estoppel

Plaintiff argues that the ALJ exceeded the proper scope of the remand directed by this Court and failed to follow the law of the case when he ordered a new consultative examination, held another hearing, and found on the basis of additional evidence that Plaintiff had a light RFC instead of the previously unchallenged sedentary RFC that had been based on Dr. Moattari's opinion. Further, the ALJ undertook actions inconsistent with the Court's express and implied findings.[5]

Defendant counters that the ALJ properly questioned the VE about Dr. Moattari's RFC. Further, pursuant to 20 C.F.R. §§ 404.977 and 416.1477, the additional consultative medical assessment by Dr. Han was appropriate in that it was consistent with the orders of this Court and the Appeals Council, which remanded the case for proceedings consistent with the Court's order, including taking any action needed to complete the administrative record and issue a new decision. Defendant asserts that the Ninth Circuit has not determined the applicability of the doctrine of the law of the case to administrative agencies on

---

[5] Plaintiff notes that at step two, the ALJ failed to include degenerative joint disease of the cervical spine as one of Plaintiff's severe impairments (A.R. 577), whereas the first decision of the ALJ included such an impairment; and at step three, the ALJ readjudicated Plaintiff's RFC (which had been an unchallenged sedentary RFC under the first decision of the ALJ) and determined that he had a light RFC (as had been the finding in the separate proceeding in which Plaintiff had been found to have been subsequently disabled).

remand; in any event, whether based on either Dr. Moattari's original RFC, or the augmented RFC after further hearing, the conclusion that Plaintiff was not disabled was supported by substantial evidence.

The doctrine of the law of the case has been summarized as follows:

> "The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs." Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 715 (9th Cir.1990). Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case. See id. For the doctrine to apply, the issue in question must have been "decided explicitly or by necessary implication in [the] previous disposition." Liberty Mutual Ins. Co. v. EEOC, 691 F.2d 438, 441 (9th Cir.1982). Application of the doctrine is discretionary. See United States v. Mills, 810 F.2d 907, 909 (9th Cir.1987). A trial judge's decision to apply the doctrine is thus reviewed for an abuse of discretion. See Milgard Tempering, 902 F.2d at 715.

United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir. 2000); see Sibald v. United States, 37 U.S. 388, 492 (1838).

A court abuses its discretion in applying the law of the case doctrine only if (1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. United States v. Lummi Indian Tribe, 235 F.3d at 452-53 (citing United States v. Cuddy, 147 F.3d 1111, 1114 (9th Cir. 1998)).

No case has been cited to the Court or found in which the Ninth Circuit Court of Appeals has determined the applicability

of the doctrine of the law of the case in SSA cases.[6] Some courts have applied the law of the case doctrine to SSA cases, ruling that when conducting further proceedings after remand from a court for insufficiency of the evidence to support a finding, the SSA must conform its further proceedings to the principles set forth in the judicial decision, and must not revisit issues that were actually or implicitly decided by the court that directed remand unless there is a compelling reason to depart therefrom; new evidence adduced on remand that undermined the previous ruling on sufficiency could constitute a compelling reason to depart from a previous ruling. See Wilder v. Apfel, 153 F.3d 799, 803-04 (7th Cir. 1998).

District courts within this circuit have applied the principles of judicial economy and finality embodied in the doctrine of the law of the case to SSA proceedings upon review of a matter previously remanded pursuant to sentence four of § 405(g). See Ruiz v. Apfel, 24 F.Supp.2d 1045, 1050 (C.D.CA 1998) (where the ALJ in the first administrative proceeding had determined that Plaintiff could not perform her past relevant work, when the case was remanded to the SSA with specific directions to make detailed credibility findings such that the taking or accepting of additional evidence was within the

---

[6] The Ninth Circuit Court of Appeals has cited with approval Chrupcala v. Heckler, 829 F.2d 1269 (3d Cir. 1987), where it was decided that issues decided by an ALJ and not appealed by any party were not subject to redecision on a remand; the decision in Chrupcala was based on 20 C.F.R. § 404.969 and the passage of the initial sixty-day period in 42 U.S.C. § 405(g), which grants initial jurisdiction to appeal. Rice v. Sullivan, 912 F.2d 1076, 1080-81 (9th Cir. 1990), overruled on other grounds Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991).

discretion of the ALJ if helpful to his credibility findings, it was held that the ALJ exceeded his authority on remand by considering and deciding again the issue at step four that had previously been decided in Plaintiff's favor and not appealed); Pearson v. Chater, 1997 WL 314380 (N.D.Cal. 1997), affirmed 141 F.3d 1178 (9th Cir. 1998) (where a case was remanded to the SSA for insufficient evidence with directions to determine if the claimant was capable of sedentary work, the SSA again determined that Plaintiff was not disabled, and the claimant again brought the case before the district court, it was concluded that pursuant to the law of the case the district court's determination in its first review that a rejection of a specific doctor's opinion was supported by substantial evidence would not be re-examined by the court where although additional evidence by the doctor was presented before the SSA at the hearing upon remand, no substantially different evidence was presented by the doctor, and no evidence presented at the second hearing changed any of the factors that had resulted in the ALJ's finding during the initial hearing that the doctor was not to be credited).

It has also been held elsewhere that an ALJ exceeds the permissible scope of remand where the remand was for the specific purpose of determining whether or not there were jobs that Plaintiff could perform with a specific limitation on the Plaintiff's left dominant hand, but the ALJ redetermined that Plaintiff's impairment was not severe, Ozbun v. Callahan, 968 F.Supp. 478, 480 (S.D.Iowa 1997).

On the other hand, some courts have determined that given the statutory scheme, the more appropriate principles to govern

14

the permissible scope of remand proceedings are those of res judicata or collateral estoppel. It has been held that because a district court's order remanding a case to the SSA is a final judgment, see 42 U.S.C. § 405(h),[7] Melkonyan v. Sullivan, 501 U.S. 89, 97-98, 101-02 (1991), and Shalala v. Schaefer, 509 U.S. 292, 297-98 (1993), the case that results when the findings on remand are brought back to a district court pursuant to § 405(g) is not the same litigation within the meaning of the doctrine of the law of the case, and thus principles of res judicata or collateral estoppel are more appropriately applied. Hollins v. Apfel, 160 F.Supp.2d 834, 840 (S.D.Ohio 2001). Absent evidence of an improvement in a claimant's condition, principles of res judicata apply to preclude relitigation of a case, and the principle of collateral estoppel applies to preclude litigation of an issue, by a party or one in privity with a party where the case or issue has resulted, or could have resulted, in a decision on the merits that has become final. See Drummond v. Commissioner of Social Security, 126 F.3d 837, 840-843 (6th Cir. 1997), and authorities there cited. This is a foreseeable and appropriate application of the established rule that when an administrative agency acts in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate, the courts will apply res judicata. United States v. Utah Const. & Mining Co., 384 U.S. 394, 422 (1966).

---

[7] Section 405(h) provides in pertinent part, "The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided...."

In this circuit, res judicata is not applied rigidly in administrative proceedings, and it has been recognized that application of it may not be appropriate where in connection with a determination on the merits the claimant has submitted new evidence to demonstrate that a prior finding was not correct. See Gregory v. Bowen, 844 F.2d 664, 665-66 (9th Cir. 1988).

In the absence of clear guidance as to which particular principle governs, the Court notes that under either doctrine, the scope of the remand to the ALJ is defined by the Court's order of remand and the proceedings undertaken thereafter, including the presentation and consideration of additional evidence undertaken by the participants in the proceedings. Further, both doctrines are premised upon a recognition of the need to accord finality to both administrative and judicial proceedings in appropriate circumstances; the policy in favor of conserving the resources of the agency, the Court, and the parties; and the need to achieve fair determinations by orderly procedures.

The Court's remand order in CV F 00 5962 SMS, dated February 13, 2001, authorized the Commissioner to obtain the testimony of a VE based on Dr. Moattari's RFC, and further to consider disability based on that evidence; it did not expressly preclude presentation or consideration of additional evidence. The Appeals Council's order of January 10, 2002, was consistent with the Court's remand order because it simply specified the need to provide Plaintiff an opportunity to appear at a hearing, complete the record, and issue a new decision. It also referred to the intervening, separate adjudication of Plaintiff as disabled with

16

a light RFC as of June 1, 1999, made in connection with subsequent applications filed on June 11, 1999.

The ALJ appropriately determined that the remand order required him to take the VE's testimony and to determine if there were any jobs that Plaintiff could perform in the national economy. The taking of the VE's testimony was consistent with the scope of the remand defined by the Court's remand order.

Plaintiff complains that the VE ordered a consultative exam and considered the opinions resulting therefrom. Whether viewed as a challenge to that specific evidence, or as a more general challenge to the taking of any evidence other than the VE's testimony, it is inconsistent with Plaintiff's own position at the hearing after remand where he apparently sought to have medical records of additional and later treatment to be considered in his own behalf to corroborate and explain Dr. Moattari's RFC findings regarding Plaintiff's ability to bend. Further, Plaintiff did not object to the admission of Dr. Han's report or any other exhibits. (A.R. 587.)

Plaintiff also acquiesced in the apparent scope of the hearing as articulated by the ALJ. The ALJ noted at the beginning of the hearing that Plaintiff had been receiving Title XVI benefits since June 1999. (A.R. 591.) Plaintiff's counsel did not appear to have any objection at the hearing to the ALJ's consideration of Title II issues; indeed, Plaintiff waived any reading of the issues and acquiesced in the ALJ's consideration of the current period under Title II. (A.R. 591-92.) Although Plaintiff sought to have Moattari's RFC followed, he also sought to clarify or augment it with his treating physician's assessment

17

and parts of the consulting examiner's assessment. Plaintiff's counsel was informed that the prior hearing had been vacated and that counsel would be given wide latitude on examination. (A.R. 595.) Plaintiff's counsel undertook, without objection or expression of any limitation, an examination of Plaintiff with respect to his disabilities and tolerances from all of his multiple problems between May 1994 (his alleged onset date) through the end of 1999 (when Plaintiff had been found disabled for purposes of Title XVI). (A.R. 595-96, 596-619.)

It appears that in the interests of reaching a fully informed and fair determination, the Plaintiff and the ALJ proceeded to introduce and consider additional evidence in light of the separate finding that Plaintiff was disabled with a light RFC. Such a manner of proceeding is consonant with firmly established policy. The SSA is based on an investigatory model; its proceedings are inquisitorial and not adversarial in nature. The ALJ generally is obligated to investigate facts and develop arguments for and against granting benefits. <u>Sims v. Apfel</u>, 530 U.S. 103, 110-11 (2000). The regulations specify that at a disability hearing the ALJ will "look fully into the issues" and that the ALJ "may stop the hearing temporarily and continue it at a later date if he or she believes that there is material evidence missing." 20 C.F.R. §§ 404.944, 416.1444. Further, 20 C.F.R. §§ 404.977 and 416.1477 provide that in a case remanded by the Appeals Council, the ALJ shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order. Specifically, §§ 404.983 and 416.1483 expressly provide that in

18

cases where a federal court remands a case to the Commissioner for further consideration, any issues relating to the claim may be considered by the ALJ whether or not they were raised in the administrative proceedings leading to the final decision in the case.

In view of the considerable additional evidence submitted at the hearing without objection by the Plaintiff, the scope of Plaintiff's counsel's examination at the hearing, the lack of any objection at the administrative level to the scope of the proceedings, and the pertinent policies, the Court concludes that the present case is not an appropriate one for the application of the law of the case, res judicata, or collateral estoppel. There is no indication of any arbitrary or excessive conduct on the part of the ALJ or any significant or substantial challenge to the jurisdiction of the Court. The Court will consider the parties' contentions concerning the issues determined by the ALJ upon remand.

C. Consultative Examination

The Court finds no abuse of discretion or excess of authority in the ALJ's decision to obtain another consultative exam. The Court concludes that the uncertainty and ambiguity of Moattari's RFC was revealed once the VE on remand testified to the differing conclusions as to the availability of jobs that Plaintiff could perform depending on the extent of Moattari's unspecified limitations on pushing and pulling.

Within the framework of the regulations, the Commissioner has broad latitude in ordering a consultative examination. Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001) (citing Diaz av.

Sec'y of Health and Human Servs., 898 F.2d 774, 778 (10th Cir. 1990)). It is appropriate to request a consultative exam where needed additional evidence is not contained in the records of the claimant's medical sources, 20 C.F.R. §§404.1519a(b)(1), 416.919a(b)(1), or where there is a conflict, inconsistency, ambiguity or insufficiency in the evidence that must be resolved and that cannot be resolved by recontacting the claimant's medical source, 20 C.F.R. §§404.1519a(b)(4), 416.919a(b)(4). Reed v. Massanari, 270 F.3d at 842 (citing Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997)). In light of Plaintiff's desire to present additional evidence beyond Dr. Moattari's opinion, and in view of the clear need to obtain specialized, updated data and expert opinions to clarify or amplify Dr. Moattari's RFC, the ALJ's seeking a consultative exam from an orthopaedic specialist was not an abuse of discretion.

In any event, the ALJ's decision shows that the report from the consultative exam was used to clarify and update Dr. Moattari's RFC, and not to disregard it. The actions taken by the ALJ were thus consistent with the Court's order of remand and were taken to effectuate the Court's order.

III. Rejection of Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ's rejection of Plaintiff's credibility was improper because the reasons given for the ALJ's conclusion were not clear and convincing.

The existence and severity of a person's reaction to a physical ailment, such as the existence and severity of pain, are subjective phenomena, the extent of which cannot be objectively measured. Byrnes v. Shalala, 60 F.3d 639, 642 (9th Cir. 1995). In

20

order to reject a claimant's subjective complaints, the ALJ must provide specific, cogent reasons for the disbelief. <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant introduces medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the subjective symptoms, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence such as objective medical findings. <u>Id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996). Unless there is affirmative evidence tending to show that the claimant is malingering, the reasons for rejecting the claimant's testimony must be clear and convincing, and the ALJ must set forth the rejection by identifying what testimony is not credible and what evidence undermines the claimant's complaints. <u>Lester v. Chater</u>, 81 F.3d at 834. The findings of the adjudicator must be properly supported by the record and must be sufficiently specific to allow a reviewing court to conclude that the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony. <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-46; <u>Byrnes v. Shalala</u>, 60 F.3d at 641-42 (9th Cir. 1995); <u>see</u> 20 C.F.R. § 404.1529(c) [disability] and 20 C.F.R. § 416.929(c) [supplemental security income].

Social Security Ruling 96-7p directs the adjudicator to consider not only objective medical evidence of signs, laboratory findings, and medical opinions, but also the following factors when assessing the credibility of an individual's statements:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and adverse side effects of any medication for pain or other symptoms;
5. Treatment, other than medication, for relief of pain or other symptoms;
6. Any measures other than treatment used by the individual to relieve the pain or other symptoms; and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

See also Bunnell v. Sullivan, 947 F.2d at 346.

The ALJ recited Plaintiff's subjective complaints. (A.R. 575.) He noted that Plaintiff testified that at the pertinent time, he had been unable to bend, stoop, twist, or climb; his severe leg and back pain increased with any activity; he could lift and carry ten to twenty pounds, sit twenty-five to thirty-five minutes, stand thirty to forty-five minutes, and walk twenty to thirty minutes; he would have to lie down for an hour and one-half to two hours if he walked. He was blind in his left eye. (AR. 575.)

The ALJ expressed his credibility findings and the factors that he found detracted from Plaintiff's credibility. (A.R. 573-75.) The ALJ found that during the five-year period, Plaintiff had impairments that reasonably could be expected to produce some of his symptoms. (A.R. 573.) However, the degree of limitation Plaintiff alleged was not supported by the objective medical evidence and was not entirely credible when evaluated under the pertinent legal standards.(Id.)

The ALJ chronicled the medical history, consisting largely of treatment notes and reports concerning slight degenerative changes of the lumbar spine with subjective lower extremity

radiculopathy but no acute spinal cord compression; only mild degenerative changes of the right knee in May 1999; pulmonary function tests in February 1997 and October 1998 showing only mild chronic obstructive pulmonary disease with significant improvement after bronchodilator and no significant abnormalities; mitral valve prolapse, but no mitral regurgitation, and bilateral coronary angiograms showing only some luminal plaque and no occlusive lesion; and only mild gastritis. Plaintiff was advised in October 1998 to stop smoking. (A.R. 573-74.) Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be considered with others, Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir. 1999). The ALJ appropriately considered the longitudinal, objective medical evidence, which constituted a clear and convincing reason for rejecting the extent of Plaintiff's subjective claims.

The ALJ mentioned agreed medical examiner Dr. Kucera, who in October 1994 concluded that Plaintiff's injuries did not prevent him from returning to work as a production worker or small parts assembly person. (A.R. 573.) A doctor's opinion that a claimant can work is appropriately considered. Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995).

The ALJ stated that although Plaintiff testified that he had chronic obstructive pulmonary disease, he used only inhalers and not a nebulizer; he had never been hospitalized for the condition. (A.R. 575.) Plaintiff also admitted that with respect

to his right carpal tunnel syndrome, he obtained a wrist brace for the condition only in late 1998 or early 1999 and wore it only one year; and he had never had carpal tunnel release. (A.R. 575.) An ALJ may rely on the conservative nature of treatment or a lack of treatment in rejecting a claimant's subjective complaint. Johnson v. Shalala 60 F.3d 1428, 1433-34 (9th Cir. 1995). The record supported the conclusion that Plaintiff's impairments were not as debilitating as claimed because of the conservative and routine nature of the treatment.

The ALJ noted the finding of Dr. Weber, a consulting physician, made in April 1995 that although Plaintiff exhibited significant paraspinous muscle spasm and restricted movement of the lumbar spine, he had an exaggerated response to light touch in the lower back area; appropriate treatment was anti-inflammatory and analgesic medications. (A.R. 573.) The ALJ noted the opinion of treating physician Sanseau in November 1998 that Plaintiff's complaints of chest pressure might be due in part to nerves; Dr. Sanseau recommended relaxation exercises. (A.R. 574.) He noted that agreed medical examiner Kucera, chosen by Plaintiff, had noted in his October 1994 report that Plaintiff's subjective complaints were significantly greater than his objective findings. (A.R. 575.) As Defendant notes, evidence that a claimant amplifies his symptoms supports rejection of the claimant's subjective complaint. Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).

The ALJ relied on the fact that although Plaintiff had earlier indicated that he could not read and could not write more than his name, he testified that he could write a brief telephone

24

message and read twenty-five per cent of the newspaper daily, although he did not always understand what he read. (A.R. 575.) Inconsistent statements are matters generally considered in evaluating credibility and are properly factored in evaluating the credibility of a claimant with respect to subjective complaints. Included in the factors that an ALJ may consider in weighing a claimant's credibility are the claimant's reputation for truthfulness; inconsistencies either in the claimant's testimony or between the claimant's testimony and the claimant's conduct, daily activities, or work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may consider whether the Plaintiff's testimony is believable or not. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999). Although Plaintiff argues that the inconsistency was only technical, it was for the ALJ to evaluate the weight to be placed on the inconsistency.

In the present case, the ALJ relied on multiple clear and convincing reasons, supported by substantial evidence in the record, for rejecting the extent of Plaintiff's claimed subjective limitations. Cf. Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004).

IV. Sufficiency of the Evidence Supporting the Light RFC

The ALJ determined that Plaintiff met the insured status requirements of the Act for entitlement to a period of disability and disability insurance benefits if the evidence established that Plaintiff was under a disability on or before March 31,

25

1999. (A.R. 573.)

Plaintiff argues that the finding that his RFC was light during the period between May 20, 1994 through May 31, 1999, lacked the support of substantial evidence. Plaintiff contends that the evidence supporting a light RFC was insubstantial because the opinions relied upon were "dated," or were rendered just without and just within the early part of the period.

An ALJ may disregard a treating physician's opinion that is controverted by other opinions only by setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989). This burden is met by stating a detailed and thorough summary of the facts and conflicting clinical evidence, stating the interpretation of the evidence, and making findings. Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir 1986). However, if the medical opinion of a claimant's treating physician is uncontroverted, then an ALJ must present clear and convincing specific reasons, supported by substantial evidence in the record, for rejecting the uncontroverted medical opinion of a claimant's treating physician. Holohan v. Massanari, 246 F.3d 1195, 1203 (9th Cir. 2001). A failure to set forth a reasoned rationale for disregarding a particular treating physician's findings is legal error. Cotton v. Bowen, 799 F.2d at 1408.

The medical opinion of a nontreating doctor may be relied upon instead of that of a treating physician only if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing Lester v. Chater, 81 F.3d 821, 830 (9th

Cir. 1995)). The contradictory opinion of a nontreating but examining physician constitutes substantial evidence, and may be relied upon instead of that of a treating physician, where it is based on independent clinical findings that differ from those of the treating physician. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinion of a nontreating, nonexamining physician can amount to substantial evidence as long as it is supported by other evidence in the record, such as the opinions of other examining and consulting physicians, which are in turn based on independent clinical findings. <u>Andrews v. Shalala</u>, 53 F.3d at 1041.

The ALJ credited the opinion of agreed medical examiner Dr. Kucera rendered on October 12, 1994 that Plaintiff could still perform his past relevant work as a production worker or small parts assembly person (A.R. 573.)

The ALJ noted the opinion of a medical expert who testified at the first hearing (Dr. Carl Leslie Heyn, who practiced orthopedic medicine with board certification in physical medicine and rehabilitation [AR. 70]), that Plaintiff had a sedentary RFC; however, the ALJ noted that the only rationale cited by the expert to justify the restrictive RFC was the Plaintiff's subjective complaints of chronic low back pain, arthritis and discogenic problems based on Plaintiff's medical records. (A.R. 574.) Where the record supports an ALJ's rejection of the claimant's credibility as to subjective complaints, the ALJ is free to disregard a doctor's opinion that was premised upon the claimant's subjective complaints. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ's rejection of this earlier

opinion was supported by a specific and legitimate reason that in turn was supported by substantial evidence in the record.

Another reason expressed for the ALJ's placing limited weight on that opinion was because the expert had not been an examining physician; the ALJ expressly gave greater weight to the October 1994 opinion of Dr. Kucera, an examining physician, that established that Plaintiff's disability of the lower back and extremities precluded only very heavy work. (A.R. 574, 277-87.) The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The uncontradicted opinion of an examining physician may be rejected only if the Commissioner provides clear and convincing reasons for rejecting it. Id.; Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001). The opinion of a nontreating but examining physician constitutes substantial evidence, and may even be relied upon instead of the contradictory opinion of a treating physician, where it is based on independent clinical findings that differ from those of the treating physician. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

The ALJ likewise stated that he gave greater weight to the opinion of consulting examiner Usman Ali, who was board-certified in internal medicine, in November 1999 to the effect that Plaintiff could lift and carry twenty-five to thirty pounds occasionally and twenty pounds frequently; sit for a normal workday; and stand and walk with breaks every one to two hours with possible difficulty pushing, pulling heavy objects, climbing, repeatedly bending, stooping, crouching, and crawling.

(A.R. 574, 814-18.) Again, Dr. Ali performed a comprehensive internal medicine evaluation of Plaintiff. (A.R. 814.)

Further, he relied on the state agency medical consultants' conclusion in 1992 that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently with occasional stooping, crouching, kneeling, crawling, climbing, and balancing; and their opinion in 1995 that Plaintiff could perform the full range of medium work involving lifting and carrying fifty pounds occasionally and twenty-five pounds frequently. (A.R. 574-75, 163-70.) The ALJ noted that these opinions were not inconsistent with the November 1999 determination of disability due to the fact that the disability finding was based on the Plaintiff's age at the time (fifty-five years or older). (A.R. 575.) The opinions constituted substantial evidence because they were supported by specific clinical findings. The opinion of a nontreating, nonexamining physician can amount to substantial evidence as long as it is supported by other evidence in the record, such as the opinions of other examining and consulting physicians, which are in turn based on independent clinical findings. Andrews v. Shalala, 53 F.3d at 1041.

The fact that some of the evidence relied on by the ALJ was beyond the strict confines of the pertinent period is not sufficient to render it insubstantial. This is because in the instant case, the ALJ considered the longitudinal history of residual functional capacity assessments, a body of evidence that reflected RFC assessments of at least light work for a lengthy period (October 1994 through November 1999). This evidence strongly supports a finding that Plaintiff was capable of

performing light work throughout the entire period. Plaintiff himself concedes that the evidence outside of the strict period itself is not irrelevant. (Reply Br. P. 7.)

Likewise, the fact that the ALJ rejected the opinion of a rehabilitation specialist (Dr. Heyn) and instead valued the opinion of an internal medicine specialist is not necessarily determinative. Specialty is but one factor to be considered in the assignment of weight to expert opinions. Although there was some evidence that would have supported a sedentary RFC, the ALJ reasonably relied on expert opinions that constituted substantial evidence in support of a light RFC.

### DISPOSITION

Based on the foregoing, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a whole and was based on proper legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Roy Cutlip.

IT IS SO ORDERED.

Dated:    July 13, 2007                          /s/ Sandra M. Snyder
                                        UNITED STATES MAGISTRATE JUDGE

30